Max Schuster, as Administrator of the Estate of Arnold L. Schuster, Deceased, Plaintiff, v. City of New York, Defendant.

Supreme Court, Special Term, Kings County, March 6, 1953.

*Harry H. Lipsig* and *Bernard Meyerson* for plaintiff.

*Denis M. Hurley, Corporation Counsel (James E. O'Reilly* and *Harold L. Cowin* of counsel), for defendant.

WALSH, J. The question presented to this court is whether or not plaintiff's complaint states any cause of action cognizable in law which would warrant a recovery of damages against the City of New York. The defendant municipality contends that it does not and asks, therefore, that it be dismissed.

The complaint combines in one pleading four asserted causes of action. On familiar principles applicable to a motion such as this which seeks to deny a litigant the right to proceed to trial all of the facts which plaintiff asserts are to be assumed to be true. If he has presented even a single cause of action, sustainable in law, the motion, which is addressed to the complaint as a whole, must be denied.

Plaintiff, Max Schuster, sues the defendant municipality in his capacity as administrator of his deceased son, Arnold L. Schuster, tragically shot and killed by someone still at large and, for all that has been revealed to the public, still unknown. The killing of young Arnold Schuster followed the recognition and pointing out by him to the police of a dangerous criminal long sought by them, one Willie Sutton. Such identification led to Sutton's arrest and subsequent conviction and imprisonment. The case was a celebrated one, attracting much comment and nationwide interest. The public assumption was, and is, that Arnold Schuster was killed as a matter of revenge by some friend or associate of Sutton. That, however, remains an assumption, but the wave of public indignation which followed hard upon the killing was a natural and understandable one.

The foregoing is stated merely by way of preface and has, and properly can have, no bearing on the consideration of the motion now before the court, which, as stated, is to determine whether plaintiff has a legal right to seek damages against the city for his son's unfortunate and deplorable death.

Turning then to an examination of the complaint, and disregarding averments which are merely formal, an analysis of it in summarized form is as follows:

First cause of action: It is alleged that the police department functions as an arm and agency of the defendant city and that it is "duly organized for the purpose, amongst any and all other purposes, for the protection of the safety, life, limb and property of the residents of the City of New York." It is then alleged that plaintiff's intestate (i.e. Arnold Schuster) on or about the 18th day of February, 1952 " recognized a criminal known and wanted by the Police Department of the City of New York, to wit, one Willie Sutton, and said plaintiff's intestate made known his recognition and whereabouts of the said wanted criminal to certain patrolmen, employees of the said Police Department." Such information, it is then stated, " was instrumental in the apprehension and capture of the aforementioned wanted criminal." It is then alleged, upon information and belief, that the defendant municipality's police department, "Its agents, servants and/or employees, required and exacted from plaintiff's intestate his time, services and efforts in connection with his recognition of the said Willie Sutton and his supplying the information which led to the apprehension and arrest of the said wanted criminal." It is alleged that the police department knew that Willie Sutton " was an unusually dangerous character with an unusually dangerous group of associates and that they all

had a special reputation for violence ''; that subsequent to Sutton's arrest plaintiff's intestate and his family received threatening letters, telephone calls and messages to the knowledge of the police department; that such department '' initially undertook a limited and partial protection '' of plaintiff and his family '' but wholly failed and neglected to continue '' same despite the continuance of the threats; that the police department had actual and constructive knowledge prior to the evening of March 8, 1952, that the life and safety of plaintiff's intestate was endangered; that they failed, neglected and even refused on demand to furnish him the protection the situation called for. Then follow allegations as to the fatal shooting of plaintiff's intestate on or about March 8, 1952, while lawfully on one of the city streets. It is alleged that such shooting '' was due wholly and entirely to the negligence, carelessness and recklessness of the defendant, its agents, servants and/or employees, in recklessly and carelessly exposing said plaintiff's intestate to peril and danger; in failing to take due and proper precautions for his safety; in failing to guard and protect him; in failing to supply a bodyguard for him; in suffering and permitting him to go about unguarded and unprotected; in negligently and carelessly creating a false impression of safety and lack of danger; in lulling plaintiff's intestate into a false sense of security; in minimizing the dangers involved; in suffering, allowing and permitting plaintiff's intestate to be shot with a lethal weapon; and in generally being reckless, careless and negligent in the premises.''

Recovery of damages in the amount of $500,000 under the first cause of action is sought for the death of plaintiff's intestate.

Second cause of action: This cause of action derives from the same factual presentation as the first but seeks a recovery of $25,000 in damages for pain and suffering sustained by plaintiff's intestate in the interval between the time he was shot and the time of his death. It must stand or fall with the first cause of action.

Third cause of action: This cause of action rests upon a substantially similar recitation of facts. Recovery under it likewise is sought in the amount of $500,000 as damages for the wrongful death of plaintiff's intestate, but it is based on the asserted fraud and deceit practiced by defendant's agents in giving plaintiff's intestate and his family assurances that plaintiff's intestate was in no danger, that the threatening messages came from '' cranks '' and '' crackpots '' and were '' child's stuff ''; that such representations were known by the police department to be false or were made recklessly and without regard for the truth, were

made to induce plaintiff's intestate to rely thereon; that plaintiff's intestate did rely thereon and met his death as a result.

The fourth cause of action rests upon the same factual recitation as in the third cause of action but seeks a recovery of $25,000 damages for the pain and suffering sustained by plaintiff's intestate prior to his death. It must stand or fall with the third cause of action.

Stripped to its essential facts, the most that can be spelled out of plaintiff's first cause of action (and the dependent second cause of action), it seems, is a failure on the part of the defendant city to furnish plaintiff's intestate with police protection or requisite police protection. The city, as an instrumentality of the State, is under a duty to furnish police protection to its citizens and residents. Its charter so provides. But such duty, it has been held repeatedly, goes to its citizens and residents as a whole. Plaintiff sues in negligence and responsibility in negligence is co-relative to an obligation imposed and a violation thereof. To warrant a potential recovery plaintiff must establish a duty running to his intestate and a violation of that duty. Of course, if there was no duty, there could be no violation (*Palsgraf* v. *Long Island R.R. Co.*, 248 N. Y. 339, 345). A duty owing to the public generally does not inure to a member of the public individually, save only in such instance where the Legislature clearly so provides (*Steitz* v. *City of Beacon*, 295 N. Y. 51, 56). The right of the public generally to be safeguarded against burglaries does not give a cause of action to the individual whose home has been burglarized.

The duty to furnish police protection is recognized as a governmental function as opposed to a proprietary one, an instance of the latter being the city's operation of its subway and busses. Governmental functions are State functions and when performed by a municipality they are performed as an agency of the State. The State as a sovereign cannot be held answerable in a judicial action for harms which may result to private individuals from a failure or neglect arising therefrom, except insofar as it may consent to waive immunity and to be sued. Any such waiver statute, being in derogation of the common law, is to be strictly construed. The city as a division and agency of the State, for the performance of governmental functions, shares in such immunity to such degree.

Plaintiff's attorney does not dispute this. His argument is that the State has waived its immunity in circumstances such as those recited in the pleading (Court of Claims Act, § 8, formerly § 12-a).

That is true, but to a limited extent only. The applicable principle of law is well stated in *Murrain* v. *Wilson Line* (270 App. Div. 372, affd. 296 N. Y. 845), where at page 375, the court said: " The law is established that a municipality is answerable for the negligence of its agents in exercising a proprietary function, and at least for their negligence of commission in exercising a governmental function (*Bernardine* v. *City of New York,* 294 N. Y. 361; *Holmes* v. *County of Erie,* 266 App. Div. 220, affd. 291 N. Y. 798; *Miller* v. *City of New York,* 266 App. Div. 565, affd. 292 N. Y. 571), *but a municipality is not liable for its failure to exercise a governmental function, such as to provide police or fire protection.*" (Emphasis is added to the original text; see, also, citations given therein.)

In the *Murrain* case plaintiff's intestate had sustained the injuries which caused his death as a result of overcrowding on a public pier which had been licensed temporarily to a private steamship company. As stated in the opinion: " Two police officers were in attendance at the time the crowd started to gather, and two squads of five officers each were called in when the alarming condition became apparent. It is the contention of plaintiffs that the police officers did not act with the dispatch or in the manner required by the occasion to control the crowd and that the accident resulted from their failure to give proper attention and action to the situation."

The appellate courts held that the facts gave rise to no liability on the part of the municipality (p. 377) : " All that could be expected from the city under the circumstances (the Appellate Division pointed out) was police protection of the same nature and degree as would be afforded to any public gathering at any public place. Such protection is the kind described by the Court of Appeals in the *Steitz* case (295 N. Y. 56, *supra*) in speaking of statutory provision for fire protection: ' Such enactments do not import intention to protect the interests of any individual except as they secure to all members of the community the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals.' The waiver of sovereign immunity by section 8 of the Court of Claims Act (L. 1939, ch. 860) does not affect the matter. The waiver simply subjects the State and its subdivisions to the same liability as individuals or corporations for the same acts. It does not create liability on the part of a city for failure to exercise a governmental function. * * * Of course, if in the line of service an individual policeman had committed some act of negligence whereby a citizen was injured, the city would be

liable for that individual act. But no claim is made that the action of any policeman inflicted injury upon anyone here. The claim is that the police force failed to take the affirmative action which was necessary to avoid injury to members of the public, which is simply a failure of police protection. Such failure is not a basis of civil liability to individuals.''

In the case of *Ferrier* v. *City of White Plains* (262 App. Div. 94), two infant plaintiffs sustained injuries while coasting on a sled down a street in the city of White Plains when their sled was struck by an automobile crossing at a street intersection at the foot of the hill. Pursuant to legislative sanction the city had designated the street on which the boys were coasting as lawful for that purpose. A police officer had been delegated by it to stand at the foot of the hill to regulate and direct traffic. Such officer signalled an automobile driver to cross at the intersection. He was in the course of doing so when the sled with the two boys which had been coming down the street on the hill flashed in front of him and were hit. The appellate court held (p. 98): '' Police Officer Garrett, in directing traffic at the intersection where the accident occurred, was performing his duties as such officer, acting in a governmental capacity. For error or omission on his part, resulting in injury to plaintiffs, the municipality is not liable. (6 McQuillan on Municipal Corporations [2d ed.], § 2591; *Doty* v. *Village of Port Jervis*, 23 Misc. 313; *Twist* v. *City of Rochester*, 37 App. Div. 307.) Whether or not one police officer or more than one should have been assigned to Midland avenue to regulate traffic, including coasting, was a discretionary or quasi-judicial act of the commissioner of public safety and of the chief of police. For their error, if any, the municipality is not liable. (*Mills* v. *City of Brooklyn, supra,* at p. 495.) ''

In *Steitz* v. *City of Beacon* (295 N. Y. 51, *supra*), plaintiff sought a recovery against the defendant municipality because of a fire loss on the theory that such municipality had been negligent in furnishing requisite fire protection, a duty to furnish which was imposed upon it by its charter. On pages 54-56 the court stated: '' The waiver of sovereign immunity by section 8 (formerly § 12-a) of the Court of Claims Act has rendered the defendant municipality liable, equally with individuals and private corporations, for the wrongs of its officers and employees. In each case, however, liability must be ' determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations.' Accordingly the city is governed and controlled by the rules of legal liability applicable to an individual sued for fire damage under the circumstances alleged in the complaint. The question is

whether the facts alleged would be sufficient to constitute a cause of action against an individual under the same duties as those imposed upon the city solely because of failure to protect property from destruction by fire which was started by another. There is no such liability known to the law unless a duty to the plaintiff to quench the fire or indemnify the loss has been assumed by agreement or imposed by statute. There was no agreement in this case to put out the fire or make good the loss, and so liability is predicated solely upon the above-quoted provisions of the city's charter defining its powers of government. Quite obviously these provisions were not in terms designed to protect the personal interest of any individual and clearly were designed to secure the benefits of well ordered municipal government enjoyed by all as members of the community. There was indeed a public duty to maintain a fire department, but that was all, and there was no suggestion that for any omission in keeping hydrants, valves or pipes in repair the people of the city could recover fire damages to their property. An intention to impose upon the city the crushing burden of such an obligation should not be imputed to the Legislature in the absence of language clearly designed to have that effect. Language similar to that found in the Charter of the City of Beacon may be found in many municipal charters. (For example, see New York City Charter [1938], § 481; Rochester City Charter [L. 1907, ch. 755], § 317, as amd. by L. 1921, ch. 292, § 3; Lackawanna City Charter [L. 1939, ch. 785], § 213; Hudson City Charter [L. 1921, ch. 669], § 262; Batavia City Charter [L. 1921, ch. 678], § 90; Second Class Cities Law, § 131. And see General Municipal Law, § 402.) Furthermore, many of these charters antedate the enactment of section 12-a (L. 1929, ch. 467), the predecessor of section 8, of the Court of Claims Act, as does the charter in this case. As was said in *Moch Co.* v. *Rensselaer Water Co.* (247 N. Y. 160, 166), ' If the plaintiff is to prevail, one who negligently omits to supply sufficient pressure to extinguish a fire started by another, assumes an obligation to pay the ensuing damage, though the whole city is laid low. A promisor will not be deemed to have had in mind the assumption of a risk so overwhelming for any trivial reward.' *A fortiori* the Legislature should not be deemed to have imposed such a risk when its language connotes nothing more than the creation of departments of municipal government, the grant of essential powers of government and directions as to their exercise. Such enactments do not import intention to protect the interests of any individual except as they secure to all members of the community the enjoyment

of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals (Restatement of Torts, § 288; *Moch Co.* v. *Rensselaer Water Co., supra; Taylor* v. *Lake Shore & Mich. S. Ry.,* 45 Mich. 74; *Frontier Steam Laundry Co.* v. *Connolly,* 72 Neb. 767; cf. *City of Rochester* v. *Campbell et al.,* 123 N. Y. 405, and *Troeger* v. *Prudential Insurance Co. of America,* 154 Misc. 537, which cites Restatement of Torts, § 288).''

In *Hughes* v. *State of New York* (252 App. Div. 263), recovery against the State likewise was sought for asserted breach of a duty to furnish fire protection through its agency, a municipality. In rejecting such claim the court said (p. 266) : '' The State and its civil divisions when engaged as the delegates of the State in the discharge of governmental functions are not liable for the torts of their agents and contractors, unless such liability has been assumed or imposed by law. (*Herman* v. *Board of Education,* 234 N. Y. 196.) The State is not responsible for the negligence or malfesance of its officers or agents, except when such liability is voluntarily assumed by the Legislature. The doctrine of *respondeat superior* does not prevail against the sovereign, in the necessary employment of public agents.

'' Counsel for claimant urges that the duty of furnishing adequate fire protection to its citizens is a State function. No authority is cited to support such a startling proposition nor has our own investigation disclosed any. Counsel also contends that by the enactment of section 12-a of the Court of Claims Act the State has waived its immunity and is, therefore, answerable for the negligence of its officers and employees in failing to provide fire protection for claimant. In our opinion there is no moral or legal obligation resting on the State to furnish such protection. In order to impose a liability on the State there must be an obligation on its part. The State may not assume liability where there is none. (*Ausable Chasm Co.* v. *State of New York,* 266 N. Y. 326.)

'' If the State is obligated to protect the inhabitants of its municipalities against loss by fire then by the same token it must give like protection to all its residents including those living in isolated sections within its boundaries. It is just as reasonable, just as logical, to argue that the State must guard its citizens against the ravages of disease or protect them against crime or other like calamity or respond in damages to those aggrieved for its failure to do so. We cannot sanction such a conclusion.''

In *Landby* v. *New York, New Haven & Hartford R. R. Co.* (278 App. Div. 965, motion for leave to appeal to the Court of Appeals denied, 278 App. Div. 1026, 303 N. Y. 1014), recovery in damages was sought against a municipality (along with a railroad corporation) for the death of an expert electrician who (evidently as a public service) was attempting to remove " a foreign wire which had been thrown over said defendant's (i.e. the railroad's) high tension wire some hours before." The city had notice of the condition and that it was a potential source of danger to children of the community some of whom had been seen playing nearby, although the dangling wire was on railroad property. The appellate courts upheld the dismissal of the complaint below as matter of law, stating: " As to defendant village, the omission of safeguards at the scene of the accident constituted, if anything, a failure to exercise a governmental function which created no civil liability to individuals " (citing numerous authorities).

Plaintiff alleges that a legal liability derives from the provisions of section 1848 of the Penal Law. Such section provides in part: " A person, who, after having been lawfully commanded to aid an officer in arresting any person, or in re-taking any person who has escaped from legal custody, or in executing any legal process, wilfully neglects or refuses to aid such officer is guilty of a misdemeanor. Where such a command is obeyed and the person obeying it is killed or injured or his property or that of his employer is damaged and such death, injury or damage arises out of and in the course of aiding an officer in arresting or endeavoring to arrest a person or re-taking or endeavoring to re-take a person who has escaped from legal custody or executing or endeavoring to execute any legal process, the person or employer so injured or whose property is so damaged or the personal representatives of the person so killed shall have a cause of action to recover the amount of such damage or injury against the municipal corporation by which such officer is employed at the time such command is obeyed."

The weakness of this argument, in my opinion, lies in the fact that the allegations of the complaint fail to sustain it, and, in fact, belie it. It is not alleged that plaintiff's intestate was, in effect, pressed into service by the police and that he suffered death or injury " in the course of aiding an officer in arresting or endeavoring to arrest a person or retaking or endeavoring to re-take a person who has escaped from legal custody or executing or endeavoring to execute any legal process." Where a cause of action is given by statute a pleader must allege every

fact which may be necessary to enable the court to determine the applicability of such statute. (*Austin* v. *Goodrich,* 49 N. Y. 266, 267–268; *City of New Rochelle* v. *Echo Bay Waterfront Corp.,* 268 App. Div. 182, 185, affd. 294 N. Y. 678, certiorari denied, 320 U. S. 720.)

It is true that in paragraph 14 of the complaint herein it is asserted: '' Upon information and belief, said Police Department of the City of New York, its agents, servants and/or employees required and exacted from plaintiff's intestate his time, services and efforts in connection with his recognition of the said Willie Sutton and his supplying the information which led to the apprehension and arrest of the said wanted criminal.''

Such averment is largely conclusory and lacking in supporting and clarifying facts. It is not evident, for one thing, whether the police department's enlistment of Schuster's services preceded or followed Sutton's identification and arrest. From the sequence in which the recitals are set forth in this and the preceding paragraph 12 it would seem that Schuster's acts, leading to such identification and arrest, were voluntary, in which event it is not demonstrated in what manner the police department '' required and exacted '' the deceased's '' time, services and efforts in connection with his recognition of the said Willie Sutton and his supplying information which led to the apprehension and arrest of the said wanted criminal.''

Apart from this, however, the succeeding paragraphs of the complaint make it clear that the events leading to the fatal shooting occurred some time subsequent to the arrest of Sutton and that the situation envisaged by the language of section 1848 of the Penal Law, the duty imposed thereby and the cause of action given therein, had long since ceased.

There is a further aspect of this cause of action as it is pleaded, to wit, that the police department had voluntarily given protection to Schuster but had given protection which was inadequate, also that by statements and assurances given by certain of its members it had '' lulled '' plaintiff's intestate into a relaxation of vigilance and a false sense of security.

If this were true, and it must, of course, as stated, be assumed that it was true, the defendant may not be cast in liability on the basis of what is thus set forth in the complaint. If the city were under no obligation to plaintiff's intestate to furnish '' due and proper '' police protection, or indeed, any police protection, as the foregoing decisions hold, it cannot be held on the alternative theory of assumption of such duty on asserted promises by agents who lacked the power to make such commit-

ment on its behalf. An unauthorized promise to furnish such protection on behalf of the city could not bind it any more than an unauthorized promise to pay a reward of $1,000,000 or a reward in any amount.

Such lack of binding commitment in and of itself distinguishes the case of *Frazer* v. *Boder* (263 App. Div. 838, appeal dismissed 287 N. Y. 841), cited in plaintiff's memorandum of law. If it be urged that the recited acts constituted, in effect, an estoppel against the city, the answer is that employees and agents of the city cannot create such an estoppel against it. (*New York City Employees' Retirement System* v. *Eliot,* 267 N. Y. 193, 203; *Lord & Burnham Co.* v. *City of New York,* 251 N. Y. 198, 204; *City of New York* v. *Wilson & Co.,* 278 N. Y. 86, 99; *Oakhill Contr. Co.* v. *City of New York,* 262 App. Div. 530, 533; *Seif* v. *City of Long Beach,* 286 N. Y. 382, 387; *Lindlots Realty Corp.* v. *County of Suffolk,* 278 N. Y. 45, 53.)

Nor does the rank of a municipal officer who may make the representation affect the foregoing principle. In the *Seif* case (*supra*), liability was sought to be imposed on the defendant to reimburse an attorney for legal services rendered to the defendant city at the instance of its Mayor. Despite this fact and the added circumstance that the city had received the benefits of plaintiff's services it was held there was no liability. The Court of Appeals in its opinion, as above cited, said (p. 388): " Individual members of the Council (i.e. defendant's governing body) are not, as such, vested with power to bind the city, and no individual member of the Council had either power or duty, as representative of the city, to protest against or object to an assumption of power by the Mayor not granted by the Charter."

On the basis of the foregoing, the first cause of action and the second cause of action, which relies on the same factual averments, are insufficient in law and fail to sustain this complaint.

What has been said with respect to such causes of action, applies, in the main, to the third cause of action and the fourth cause of action, which are based on the same factual averments.

Such third cause of action (and the dependent fourth cause of action) plead the element of fraud and deceit and attempt to fasten legal liability on the defendant because plaintiff's intestate assertedly was led to rely on certain assurances given him by members of the police department which were in fact knowingly false when made by them, or made with reckless disregard of the truth, whereby plaintiff's intestate was " lulled " into a false sense of security.

As the city cannot be held bound by the unauthorized acts of such persons, as I see it, under the first and second pleaded causes of action, it cannot be held liable under the third and fourth causes of action. To sustain the third and fourth causes of action would be to permit plaintiff indirectly to attempt to hold the defendant municipality to a liability for which he could not hold it answerable directly under the prior causes of action. It is difficult to see how the city could be answerable for promises or assurances by one of its agencies, even though fraudulent, to do something which the city was under no obligation in law to do in the first instance and from the failure to do which no legal damage could arise.

Fundamental defects in these causes of action, I think, are the failure of the pleading to show wherein the members of the police department had authority to make binding representations as to protection which an ultimate trier of the fact might deem "due and proper"; also of the failure of the pleading to show wherein plaintiff's intestate had the legal right to rely thereon.

The function of the police department, as the New York City Charter and authorities hereinabove cited show, is to protect the public at large. While in doing so it may, and necessarily does, protect individuals, such protection is accorded to them as members of the public, not in their personal right, and it is extended or withdrawn in the discretion of the department, bearing always in mind the responsibility to the public generally. There is no legal requirement of " due and proper " protection as to an individual, even were such term capable of precise determination. The conception of what may be " due and proper " is a relative one, as to which there could be wide divergence of opinion. What might be " due and proper " to one person would not appear " due and proper " to another. The necessity of the police department protecting a number of important witnesses, for example, in a " due and proper " manner, in the opinion of some, might require the guarding of so many sources of potential danger and the furnishing to each of those persons such a cordon of custodians as would exhaust the available manpower of the department in a given area, at a given time, leaving millions of other persons without any safeguard at all. Liability cannot be predicated on such a speculative basis.

The court may take judicial notice of the nature and extent of the duty of the police department as prescribed in the City Charter. Plaintiff, along with the public generally, in dealing with public officers, is chargeable with knowledge of their powers

and limitations. (*Ontario Knitting Co.* v. *State of New York,* 147 App. Div. 316, 323, affd. 205 N. Y. 409; *People ex rel. Lown* v. *Cook,* 158 App. Div. 74, 80, affd. 209 N. Y. 578.) So chargeable it cannot now be said, on his behalf, that he was justifiably led into a blind reliance of " due and proper " protection. Nor may it be maintained, I think, that he was warranted in placing such reliance as would involve the liability herein sought to be invoked on the assurance of one or more members of the police department that the threatening messages which came to him and his family were the work of " cranks ", " crackpots " or were simply " child's stuff ", and, in effect, could be disregarded as of no consequence. It was not within the scope of the authority of the police department to bind the defendant to such assurance. It is not within the legal right of plaintiff effectively to plead on the basis thereof that plaintiff's intestate placed reliance thereon or, at least, that legally he was warranted in so doing. Clearly it was no more within the capacity of members of the police department to give such assurances to plaintiff's intestate, with the corollary that he had a right to rely thereon, than it would have been within their capacity to give him assurance that, within a given space of time, the city would not be visited by widespread fire, flood, plague, earthquake or other disaster, thereby justifying him in placing legal reliance thereon. Assurances of such nature could be no more than mere expression of opinion.

No magic formula of legal pleading can transform what is essentially an expression of opinion into a representation of fact or present as a sound basis for reliance that which is recognizable on its face as an unsound basis.

On the foregoing bases these causes of action likewise fail to sustain the complaint.

In my view, accordingly, defendant's motion to dismiss the complaint is granted. Settle order.