## In re PROUT'S ESTATE.[1]

### (Supreme Court, General Term, First Department. July 9, 1889.)

1. DESCENT AND DISTRIBUTION—LEGACY TAX—INTEREST.
   Laws N. Y. 1885, c. 483, § 4, declares that, unless otherwise provided, all taxes on collateral inheritances shall be due and payable at the death of decedent, and, if paid within a year, interest at 6 per cent. shall be charged from the time the tax accrued, and, if not so paid, 10 per cent. shall be charged; but, if paid within six months, no interest shall be charged, and a rebate of 5 per cent. shall be allowed. Section 5 provides that the penalty of 10 per cent. for non-payment provided for in section 4 shall not be charged where, by reason of claims on the estate, litigation, or other unavoidable delay, the estate cannot be settled at the end of a year from the death of decedent; and in such cases only 6 per cent. shall be charged from the expiration of such year till the cause of delay is removed. *Held*, that the intention was, in case of an exception arising under section 5, to remit the interest on the tax altogether for the year succeeding the death of decedent, and to provide a rate of 6 per cent. from the end of the year till the cause is removed.

2. SAME—EXEMPTION—DELAY—BURDEN OF PROOF.
   One claiming such exemption for the first year after the death of decedent, on the ground of litigation or other unavoidable delay, must show affirmatively that the litigation was necessary and the delay unavoidable.

Appeal from surrogate's court, New York county.

A decree was entered by the surrogate amending a former decree concerning the interest on delinquent taxes paid by the estate of William F. Prout, deceased. By the amended decree the estate was required to pay interest which had been remitted in the original decree, and from which the estate claimed legal exemption. From this amended decree the administrators of the estate appeal.

Argued before VAN BRUNT, P. J., and DANIELS and BARRETT, JJ.

[1] Reversing 3 N. Y. Supp. 834.

*G. H. Crawford,* for appellant.   *B. F. Dos Passos,* for respondent.

VAN BRUNT, P. J.   The question involved upon this appeal seems to be whether, under the circumstances of this case, the estate in question should be compelled to pay interest upon the amount of the collateral inheritance tax for the year following the decedent's death.   The question depends upon the construction to be given to sections 4, 5, c. 483, Laws 1885.   Those sections are as follows: "Sec. 4. All taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent, and, if the same are paid within one year, interest at the rate of six per cent. per annum shall be charged and collected thereon, but, if not so paid, interest at the rate of ten per cent. per annum shall be charged and collected from the time said tax accrued: provided, that if said tax is paid within six months from accruing thereof interest shall not be charged or collected thereon, but a discount of five per cent. shall be allowed and deducted from said tax; and in all cases where the executors, administrators, or trustees do not pay such tax within one year from the death of the decedent they shall be required to give a bond in the form and to the effect prescribed in section two of this act for the payment of said tax, together with interest.   Sec. 5. The penalty of ten per cent. per annum, imposed by section four hereof for the non-payment of said tax, shall not be charged where, in cases by reason of claims made upon the estate, necessary litigation, or other unavoidable cause of delay, the estate of any decedent, or a part thereof, cannot be settled at the end of a year from the death of the decedent; and in such cases only six per cent. per annum shall be charged upon the said tax from the expiration of such year until the cause of such delay is removed."

The right to the remission under section 5 does not seem to be disputed, the question being as to the amount of the remission, whether it shall be to the amount only of 4 per cent. of the 10 per cent. imposed by section 4, in case the taxes are not paid within one year, or whether the law entitles the estate to a total remission of interest for the year following the decedent's death.   In the consideration of this question it seems to be necessary to advert to the nature of the claim for interest provided by the statute.   A tax does not carry interest by implication of law as in the case of a debt, and in all systems of taxation, where default is made in the payment of the tax, interest is added by way of penalty for such default; and so, in the fourth section of the act in question, if the tax is paid within one year, interest at the rate of 6 per cent. shall be charged and collected thereon, but, if not so paid, interest at the rate of 10 per cent. shall be collected and charged from the time such tax accrued, namely, from the death of the decedent.   Then follows a premium for prompt payment, as is found in many of the tax laws, whereby there is allowed in a case where the tax is paid within six months a discount of 5 per cent., and also a provision that no interest shall be charged.   The language of section 5 expressly recognizes the nature of this interest which is charged because of the failure to pay the tax within six months after the death of the decedent.   It provides that the penalty of 10 per cent. per annum imposed by section 4 for the non-payment of said tax shall not be charged, expressly recognizing the idea that the whole amount of the interest is a penalty. It does not refer to the addition of 4 per cent. as being the penalty, but it states that the penalty of 10 per cent. per annum imposed by section 4 shall not be charged in certain cases, and then goes on and provides that in such cases only 6 per cent. per annum shall be charged from the expiration of said year, *i. e.,* the year following the death of the decedent.   Now, it seems to be clear, therefore, that if the penalty of 10 per cent. imposed by section 4 is to be remitted, (and it is not claimed that this 10 per cent. is in addition to the 6 per cent, but it is admitted that it embraces the whole amount of the penalty,) nothing remains, and the charge for interest imposed by the subse-

quent language of section 5, providing that where a remission of the penalty of 10 per cent. is permitted only 6 per cent. shall be charged, only begins from the expiration of the year following the decedent's death.

It is urged that to agree to the ingenious argument advanced by the counsel for the appellant would be to promote delay and induce litigation, so that the estate could not be settled within the year.   The protection in this regard is perfect in the act, because the burden rests upon the party claiming exemption to show that he comes within the provisions of the act, namely, that the settlement of the estate has been delayed by necessary litigation or other unavoidable cause, and that therefore they are not in a condition to settle the estate or pay the tax.   The learned surrogate seems to us to have fallen into an error, because he assumes that any portion of what is called "interest" in the act is to be deemed otherwise than as a penalty for non-payment.   He says that it seems plain upon reading the two sections together that the intention was to relieve the estate from the payment of the penalty, and not from the interest; but, as both were penalties, the reasoning cannot apply, and it further cannot apply because the act says that the estate shall be relieved from the whole charge, and it calls the whole charge a penalty.   We think, therefore, that the estate was not chargeable with the penalty during the first year, be it called "interest" or by any other name.   The decree appealed from in this respect must be reversed, with costs.

BARRETT, J.   The legislature has said in so many words that where an estate, for certain good reasons, cannot be settled in one year from the death of the decedent, the interest on the tax shall be but 6 per cent., and shall run from the expiration of the year.   The courts cannot extend this.   The law is thus written.   Besides, it is a law creating a penalty, and should be strictly construed; and I think, too, that it is entirely homogeneous.   If the tax is paid in six months, there is a rebate of 5 per cent.   If paid after the six months, and within the year, interest at 6 per cent. is charged upon it.   That provision is for a case where the estate might be conveniently settled and the tax paid within the year.   In such a case, after the expiration of the year, the 10 per cent. penalty is imposed.   If, however, it is a case where the estate could not be so conveniently settled for the reasons specified in the act, neither the past interest nor the 10 per cent. penalty is imposed, but simply 6 per cent. from the end of the year until the cause of the delay is removed.   This is fair and reasonable, and I see no incongruity in the scheme.   For these reasons, and those given by the presiding justice, in whose opinion I fully concur, the order of the surrogate should be reversed in this particular.   All concur.

---

### WILLIAMS *et al. v.* COLBY *et al.*

*(Supreme Court, General Term, First Department.   July 9, 1889.)*

1. CORPORATIONS—LIABILITIES—ASSUMING INDEBTEDNESS OF PARTNERSHIP.
    Where a corporation, organized by the members of a partnership, passes a resolution to purchase the assets of the partnership, and assume its indebtedness, it cannot, by a secret understanding between the trustees that certain claims are not included, prevent the creditor from following the firm's assets into the hands of the corporation.

2. PAYMENT—BY SUBSTITUTION OF SECURITIES.
    It appeared that one of the incorporators, who was known to the creditor, a woman of no business knowledge or experience, induced her to accept his individual note, and surrender the firm notes; shares of the corporation stock being deposited as collateral.   She surrendered the firm notes with no intention to release the firm, and she supposed that the note and stock was collateral to the firm notes, and she afterwards demanded payment of the corporation, and was told by the trustees that she would be paid shortly.   *Held,* that her claim against the corporation was not released.

Appeal from an order confirming the report of a referee.

In an action by Ichabod T. Williams and others against Charles C. Colby and others for the appointment of a receiver, and the settlement of the affairs of Colby, Duncan & Co., a receiver was appointed, and a claim was presented by Minna Bresler. The referee to whom the claim was referred reported as follows:

"*I Find as Matters of Fact:   First.* That on or about the 1st day of July, 1885, Jacob Christie entered into an agreement with Minna Bresler, a true copy of which is annexed hereto, marked 'Exhibit A.' *Second.* That Minna Bresler loaned to Jacob Christie, (then doing business alone, under the firm name of Christie & Son,) on or about the 1st day of July, 1885, the sum of ten thousand dollars, and that on October 20, 1885, she loaned to him an additional sum of ($5,000) five thousand, and that on July 1, 1885, he delivered to her his promissory note, in the words and figures following, that is to say: '$10,000. New York, July 1, 1885. Two years after date we promise to pay to Minna Bresler or order ten thousand dollars at the Bank of the Metropolis, for value received. JACOB CHRISTIE & SON.' And that on October 20, 1885, he delivered to her his promissory note, in the words and figures following: '$5,000. New York, October 20, 1885. Two years after date we promise to pay to Minna Bresler or order five thousand dollars at the Bank of the Metropolis. Value. JACOB CHRISTIE & SON.' *Third.* That on March 6, 1886, Jacob Christie, Charles C. Colby, and William H. Duncan organized the firm of Christie & Co., and that a true copy of the articles of copartnership of said firm, which were on that day duly executed and delivered by all the members of said firm, is hereunto annexed, and marked 'Exhibit B.' *Fourth.* That, at or about the time of the formation of the firm of Christie & Co., Minna Bresler surrendered to Jacob Christie the said notes of Christie & Son, and received in consideration of such surrender the following receipt, signed by Jacob Christie, to-wit: 'New York, April 6, 1886. Received from Minna Bresler, fifteen thousand dollars, consisting of cash seven thousand five hundred dollars, and seven thousand five hundred dollars checks, the same being loan secured by notes for $15,000. $15,000. CHRISTIE & COMPANY.' And that Jacob Christie at the same time delivered to her three promissory notes for five thousand dollars, each dated May 6, 1886, payable to her order at the Bank of the Metropolis, for value received, all signed 'CHRISTIE & COMPANY:' one being payable two years from date, one three years from date, and one four years from date. *Fifth.* The said receipt and notes of the firm of Christie & Co. were made by Jacob Christie, one of the partners, for value, in pursuance to the copartnership contract of Christie & Co. *Sixth.* The said receipt and notes of the firm of Christie & Co. were signed and delivered by Jacob Christie with the knowledge and consent of Colby. *Seventh.* On June 10, 1886, Minna Bresler paid to Christie & Co. the sum of five thousand dollars, and on August 9, 1886, she paid an additional sum of five thousand dollars to said firm, and in each case she received from Jacob Christie the receipt of the firm of Christie & Co., signed by Jacob Christie. *Eighth.* That shortly prior to May 17, 1887, the name of the said firm was changed from Christie & Co. to Colby, Duncan & Co., the rights and obligations of said firm as to third parties and the rights and obligations of the partners between themselves remaining unchanged. *Ninth.* On May 17, 1887, the corporation known as 'Colby, Duncan & Co.' was duly organized under the laws of this state pursuant to provisions of the act entitled 'An act to authorize the formation of corporations for manufacturing, mechanical, and chemical purposes, passed February 17, 1848,' and the several acts extending and amending the same. *Tenth.* The objects for which said corporation was formed were the manufacture and sale of pianos and other musical instruments. *Eleventh.* The amount of capital stock of said corporation was two hundred thousand dollars, divided into two thousand shares, of one hundred dollars each, and the term of the existence of said corporation was to be twenty-five years.