to this state of facts, used the following language: "Assuming, then, that Mrs. Tallman did survive her husband, and there is (it is claimed) no provision for the vesting of the whole estate until after her death and the death of both the grandchildren, the case might have then been brought within the prohibition of the statute and the devise would have been void. Hawley v. James, 16 Wend. 61; Odell v. Youngs, 64 How. Prac. 56; Dana v. Murray, 122 N. Y. 617, 26 N. E. 21. But the will speaks as of the time of the testator's death, and whatever might have been the effect, had Maria E. Tallman, his wife, survived him, matters not, as by her death before him the legacies and devisees to her lapsed and are not to be considered in estimating the terms within which alienation is restrained or the absolute ownership suspended."

I therefore hold that, Jessica Irene Pilsbury having reached the age of 21 years prior to the death of her father, that provision of his will creating the trust during her minority was thereby rendered inoperative, and the title to the bequest vests in her absolutely, subject to the provision made for the widow of the deceased by the codicil of 1903. And I further hold that the two instruments, and the codicils thereto, are to be construed and held as the last will and testament of Sherman Dexter Pilsbury, deceased; that the appointment attempted to be made by the will of 1897 is invalid; that the trust created for the benefit of Jessica in the will of 1887, during her minority, is inoperative, she having reached her majority before the death of her father; that the fund of $10,000, with respect to which the testator had the power of appointment, is vested in Jessica Irene Pilsbury, subject to the setting apart of the fund of $1,500 provided for by the codicil of 1903.

Findings and decree to be prepared accordingly.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

J. R. Bowen, for Edwin M. Pilsbury, Lillian E. Pilsbury, Clarence T. Pilsbury, and Mary E. Pilsbury.

Martin T. Nachtmann, for Jessie I. P. Toll.

Abraham V. De Witt, for Agnes Lane and Louis D. Pilsbury.

Edwin Van Wormer, in pro. per.

PER CURIAM. Decree affirmed, without costs to either party, upon the opinion of Fitts, surrogate. All concur, except PARKER, P. J., not voting.

---

### In re KENNEDY'S ESTATE.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

TAXATION—TRANSFER TAX—EVIDENCE OF PROPERTY.

   Testimony of a witness, who was in litigation with deceased before his death, and with his estate thereafter, that five years before his death deceased showed him a box, stating that it contained $700,000 of securities, which witness did not handle, count up, or estimate, is not such evidence as to authorize the imposition of a transfer tax on the estate based on that amount being subject thereto.

Appeal from Order of Surrogate, Ulster County.

In the matter of the appraisal, under the taxable transfer act, of the estate of David Kennedy, deceased. From a decree of the surrogate fixing a tax of $6,156.15 on the estate, Eliza D. Kennedy and others, as executors of deceased and individually, appeal. Reversed and remitted for reassessment.

David Kennedy died upon the 5th day of August, 1901. Upon the 14th day of November, 1901, these appellants, who are the executors under his will, petitioned the surrogate of Ulster County for the appointment of the county treasurer to appraise the estate of said decedent. Upon that day an order was made. Proceedings were thereafter had before the said appraiser, and upon the 18th day of May, 1903, the appraiser made his report, in which he found the sum of $652,615 as the amount of property transferred and subject to the tax. The surrogate confirmed this report pro forma, and upon an appeal taken by the executors the assessment as stated by the appraiser was affirmed upon the 12th day of June, 1905. Thereafter, and upon October 2, 1905, the assessment was modified by a supplemental decree, which deducted the sum of $40,000 from the amount of property assessed as having been transferred under the will by deceased; the said $40,000 being stock in the Dr. David Kennedy Corporation, which meantime had gone into bankruptcy and become valueless. From this final decree as thus modified, except as to the modification itself, these executors have appealed to this court.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Brinnier & Searing (John W. Searing, of counsel), for appellants. W. N. Gill (G. D. B. Hasbrouck, of counsel), for respondent.

SMITH, J. Before the appraiser certain securities were presented by the executors valued by them in the aggregate at $78,066.25. These were assessed at the valuations put upon them by the executors. To this sum was added $40,000, the par value of 400 shares of stock in the Dr. David Kennedy Corporation, also $21,000, the value of 20 Union Pacific convertible bonds which were found in a safe deposit box, and which were claimed by the executors to belong to the widow. One other item is thus stated: "Other personal property, bonds, stocks, notes and cash, which I am unable more particularly to describe, of the value of $560,933.75." This made the total valuation exactly $700,000.

It is not claimed that any stocks, bonds, or notes, or other property were presented to the appraiser or to the surrogate to make up this last item. In 1896, more than five years prior to the death of David Kennedy, he exhibited some securities in a safe-deposit box which were stated by David Kennedy at that time to be worth $700,000. Because these executors did not account for that sum or explain what had become of that property the surrogate has charged the estate therewith in finding a basis for the assessment of this tax.

The first contention of the appellants is that neither the appraiser nor the surrogate is authorized to appraise any property which is not discovered. The appellants further contend that, if this be not so, the finding of the appraiser and the surrogate that property to this amount passed by the will is against the weight of evidence.

That this statute is a special tax law and requires a strict construction is held in Matter of Enston, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464. In Matter of Wolfe's Estate, 137 N. Y. 205, 33 N. E. 156, Judge Gray discusses quite fully the nature of the act, and likens the power of the surrogate in proceeding to assess to that of tax assessors in the assessment of persons or property for taxation. It is not necessary in the case at bar to hold that no property can be appraised by

the appraiser or assessed by the surrogate unless that property ·be identified. However liberal may be the interpretation given to this statute, it is clear that an estate should not be taxed, except upon clear and convincing proof of the extent of property passing under the will, or by transfers made before death and in contemplation thereof.

In examining the evidence in this case, the finding of the appraiser and of the surrogate is based almost exclusively upon the testimony of the witness Phillips. This witness swears that in 1891, 10 years before the death of David Kennedy, he brought into witness' presence a box containing securities, some of which he saw, and which David Kennedy then stated amounted to $420,000. Afterwards and in 1896, more than five years prior to the death of David Kennedy, witness Phillips swears that he was taken by him to a safe-deposit vault at the corner of Wall and Nassau streets in the city of New York, and there a box of securities was brought forth, and it was stated by David Kennedy that the securities in that box were of the value of $700,000. The witness did not handle these securities, did not estimate them or count up their value, and all he knows as to the aggregate value was the statement made by David Kennedy at the time. In addition to this are some statements of accounts with some brokers and with the Chemical National Bank, showing considerable amounts of money passing through the account. It is impossible to tell with any accuracy from these statements how often the moneys were turned over, or how much money was at any time upon deposit or involved therein. Evidence was given of the statements of David Kennedy as to the profits that he made from certain transactions, and as to the value of certain stocks in certain corporations. There is, however, no evidence whatever which could be made the basis of any substantial addition to the amount claimed by the executors to be the amount of property which belonged to David Kennedy at his death, except the evidence of the witness Phillips hereinbefore referred to. It further appears that the witness Phillips was a hostile witness and had been in litigation with David Kennedy in his lifetime and was in litigation with his estate after his death. His testimony upon the stand is not that of a candid witness. He made no estimate of the value of the securities shown to him in 1891 or in 1896. Declarations of this nature are always regarded as uncertain evidence, and, when sworn to by a hostile witness as having been made five years before the death of decedent, they can have little weight as against the positive oath of the executors as to the assets actually found. Respondents claim that, upon the presumption of continuance, the possession by appellants' testator of $700,000 in 1896 put upon the executors the burden of proving what became of that money before the death of their testator. The presumption ·of continuance varies in its strength according to circumstances. It appears that David Kennedy was speculating in the stock market. It would be a harsh and unreasonable rule to hold these executors bound to account for all of these moneys which might either have been wasted or have been given away prior to the death of their testator so as to be free from the burden of this tax. It is true that the executors were not frank. Both of them declined to answer questions as to gifts to themselves from the

testator.   One of them did thereafter answer some questions in reference thereto.   Under the laws for the assessment of personal property, what may be called a tentative assessment is first made, and this the person assessed is bound to swear off, if he would relieve himself from the burden of the assessment.   If upon his application for relief he shall willfully neglect and refuse to attend and be examined or to answer any material question put to him he is punished by forfeiting his right to have his assessment reduced.   Tax Law, Laws 1896, p. 810, c. 908, § 36.   There is no such provision in the transfer tax law.   A witness refusing to answer a material question can be punished for contempt, and the surrogate, if applied to for that purpose, would undoubtedly have exercised the power in such a way that the offense would not have been repeated thereafter.   Any apparent attempt however, upon the part of the executors to evade the payment of a just tax, however reprehensible it may be, does not authorize either the appraiser or surrogate to make an assessment upon suspicion or otherwise than upon convincing evidence of the transfer of property for which the tax is imposed by the statute.

We are of opinion, therefore, that the decree of the surrogate should be reversed upon the law and facts, and the matter remitted to the surrogate for a reassessment, without costs to either party.   All concur; COCHRANE, J., in opinion.

COCHRANE, J. (concurring).   The testimony of the witness Phillips was sufficient to place on the executors the burden, not necessarily of showing what had become of the property of the deceased during the lapse of time which had intervened between the occurrences when Phillips saw or was told about the said property by the deceased and the death of the latter, but of showing that such property had not come into their hands under such circumstances as would render it liable to taxation in this proceeding, and also of showing that they had no knowledge or information on the subject beneficial to the state.   This they failed to do.   Their refusal to answer proper questions before the appraiser was contumacious.   If the two executors who thus defied the court were the only ones affected by the decree fixing the tax, I would favor an affirmance of such decree, on the theory that the appraiser and surrogate were justified in finding that the information which the executors improperly withheld would have corroborated the testimony of Phillips.   One of the executors did subsequently recede from his contemptuous attitude, but not the other.   An affirmance of the decree, however, would visit the misconduct of the executors upon innocent legatees, who must bear the greater part of the tax which has been imposed.   For this reason I concur in the reversal.