PEOPLE ex rel. LOWN v. COOK, County Treasurer, et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1913.)

1. STATUTES (§ 246*)—TRANSFER TAX LAW—CONSTRUCTION.

The Transfer Tax Law (Laws 1896, c. 908), as amended and re-enacted by Laws 1905, c. 368, imposing a tax on the transfer of property, is a special act, and must be strictly construed.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 327; Dec. Dig. § 246.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EVIDENCE (§ 65*)—TRANSFER TAXES—STATUTES—PRESUMPTIONS.

An executor is presumed to know the provisions of the Transfer Tax Law applicable to the county of the domicile of testator.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 85; Dec. Dig. § 65.*]

3. TAXATION (§ 901*)—TRANSFER TAXES—INTEREST—LIABILITY.

Under Transfer Tax Law (Laws 1896, c. 908) §§ 222, 223, 236, as amended and re-enacted by Laws 1905, c. 368, providing that the transfer tax shall be paid to the State Comptroller in counties in which the office of appraiser is salaried and in other counties to the county treasurer, and that, if the tax is not paid within 18 months from the accrual thereof, interest shall be charged at the rate of 10 per cent. per annum from the time of accrual, the acceptance on account by the county treasurer of a county having no salaried appraiser of a sum equaling the amount of the tax paid to him after the expiration of the 18 months is not an acceptance in full payment of the tax, and does not bar the remedy provided by section 235 for the collection of the 10 per cent.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1724; Dec. Dig. § 901.*]

4. TAXATION (§ 901*)—TRANSFER TAXES—INTEREST.

Where a transfer tax payable to a county treasurer was not sent to him until after the time fixed by Transfer Tax Law (Laws 1896, c. 908) § 223, as amended and re-enacted by Laws 1905, c. 368, imposing interest on taxes not paid within a specified time, after an ineffectual attempt to pay within the time the tax to the State Comptroller unauthorized to receive it, and the treasurer gave a receipt therefor on account, mandamus did not lie to compel the execution of a receipt acknowledging payment of the tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1724; Dec. Dig. § 901.*]

Appeal from Special Term, Albany County.

Mandamus by the People, on the relation of Frank B. Lown, against Albert H. Cook, as County Treasurer, and another, to compel the execution and delivery of a receipt of the payment of a transfer tax. From an order denying a motion for a writ of peremptory mandamus, relator appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Harry C. Barker, of Poughkeepsie (Danforth E. Ainsworth, of Albany, of counsel), for relator.

Thomas F. Carmody, Atty. Gen. (Henry Selden Bacon, of Albany, of counsel), for comptroller.

Frederick E. W. Darrow, of Kingston, for county treasurer.

LYON, J. The relator is the executor of the estate of Charles H. Roberts, who died February 11, 1909, a resident of the town of Lloyd, Ulster county, N. Y. On the 14th day of July, 1910, following an appraisal of the value of the estate for the purpose of fixing the amount of the transfer tax, a decree was duly entered by the surrogate of Ulster county fixing such value for the purpose of taxation at $1,178,723.96, and fixing and determining the tax to be paid thereon at $11,787.23. On the same day, a notice was duly served upon the relator of the determination by the surrogate as to the value of the es-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tate and of the tax to which it was liable, which contained the following direction made by the surrogate:

"And it is further ordered that interest at the rate of ten per cent. per annum shall be charged upon said tax from the 11th day of February, 1909, if not paid on or before the 10th day of August, 1910."

Also upon such notice was the following postscript:

"N. B. This tax is payable to the county treasurer of Ulster county, Kingston, N. Y."

The relator resided at Poughkeepsie, in the county of Duchess, in which county the office of transfer tax appraiser was salaried, and .hence the tax by law was payable to the State Comptroller, while the decedent dying a resident of the adjoining county of Ulster, in which county the office of the appraiser was not a salaried office, the tax was by law payable to the county treasurer. On the 8th day of August, 1910, the relator mailed to the Comptroller of the State of New York, at Albany, his check for $11,787.23 in payment of said transfer tax, which check was doubtless received at the Comptroller's office August 9th. On August 10th the Comptroller returned the check to the relator by mail, accompanied by a letter stating that he was obliged to return it for the reason that the transfer taxes in Ulster county were payable to the county treasurer, and that relator should therefore forward the check for the tax to the county treasurer, Kingston, N. Y. The check and letter were received at the office of the relator August 11th; but, he being out of town, they did not reach him until Saturday, August 13th, when the relator made out a new check of that date drawn on a Poughkeepsie bank payable to the order of the treasurer of Ulster county and mailed the same to him at Kingston, where it was received Monday, August 15th, the last day for the payment of the tax free from the 10 per cent. charge being August 11th. The county treasurer thereupon mailed to the relator a receipt for payment "on account," and deposited the check, which was collected in due course of business. Thereafter the relator filed with the surrogate of Ulster county his accounts, and asked that the same be approved, and that he be discharged as such executor, which the surrogate refused to do until the relator had produced and filed with said surrogate the receipt of the treasurer of Ulster county, countersigned by the State Comptroller, showing the payment of the transfer tax. Thereupon the relator demanded of the county treasurer that he make and deliver to the relator a receipt showing payment in full of the transfer tax, which the county treasurer refused to do upon the ground that the tax imposed was subject to 10 per cent. interest from the accrual thereof by reason of the failure of the relator to pay the tax within 18 months from the death of the testator. The relator then applied at Special Term for a peremptory writ of mandamus directed to the county treasurer and to the State Comptroller, commanding the former to make, sign, and deliver such receipt, and the latter to countersign the same. The court having denied relator's said application, this appeal has been taken by him to this court.

The statute in force at the time of the death of relator's testator

February 11, 1909, relating to taxable transfers (Tax Law, art. 10; General Laws, c. 24; Laws 1896, c. 908, as amended and re-enacted by c. 368, Laws 1905), provided so far as is material to be considered upon this appeal, as follows:.

"Sec. 222. Accrual and payment of tax.—All taxes imposed by this article shall be due and payable at the time of the transfer, except as herein otherwise provided. * * * Such tax shall be paid to the State Comptroller in a county in which the office of appraiser is salaried, and in other counties, to the county treasurer, and said State Comptroller or county treasurer shall give, and every executor, administrator or trustee shall take, duplicate receipts from him of such payment as provided in section 236. * * *

"Sec. 223. Discount and interest.—If such tax is paid within six months from the accrual.thereof, a discount of five per centum shall be allowed and deducted therefrom. If such tax is not paid within eighteen months from the accrual thereof, interest shall be charged and collected thereon at the rate of ten per centum per annum from the time the tax accrued. * . *. *

"Sec. 236. Receipts from county treasurer or comptroller.—One of the duplicate receipts issued for the payment of any tax under this article, as provided by section 222, shall be countersigned by the State Treasurer if the same was issued by the State Comptroller, and by the State Comptroller if issued by any county treasurer. · The officer so countersigning the same shall charge the officer receiving the tax with the amount thereof and affix the seal of his office to the same and return to the proper person; but no executor, administrator or trustee shall be entitled to a final accounting of an estate in settlement of which a tax is due under the provisions of this article unless he shall produce a receipt so sealed and countersigned, or a certified copy thereof. * * *

"Sec. 240. Reports of county treasurer.—Each county treasurer in a county in which the office of appraiser is not salaried shall make a report, under oath, to the State Comptroller, on January, April, July and October first of each year, of all taxes received by him under this article, stating for what estate and by whom and when paid. The form of such report may be prescribed by the State Comptroller. He shall, at the same time, pay the State Treasurer all taxes received by him under this article and not previously paid into the state treasury, and for all such taxes collected by him and not paid into the state treasury within thirty days from the time herein required, he shall pay interest at the rate of ten per centum per annum.

"Sec. 240a. Report of State Comptroller; payment of taxes.—The State Comptroller shall deposit all taxes collected by him under this article in a responsible bank. * * * The State Comptroller shall on the first day of each month make a verified return to the State Treasurer of all taxes received by him under this article, stating for what estate, and by whom and when paid; and shall credit himself with all expenditures made * * * on account of such taxes, for salary, refunds, or other purposes lawfully chargeable thereto. He shall 'on or before the 10th day of each month' pay to the State Treasurer the balance of such taxes remaining in his hands at the close of business on the last day of the previous month, as appears from such returns.

"Sec. 241. All taxes levied and collected under this article when paid into the treasury of the state shall be applicable to the expenses of the state government and to such other purposes as the Legislature shall by law direct."

The principal contentions of appellant are threefold: That the 10 per cent. denominated interest was in reality a penalty, and hence that the statute must be strictly construed against the claim for the payment of the 10 per cent.; that, the sum fixed as the amount of the tax having been paid, the 10 per cent. is not collectible, as the exclusive remedy for its collection was given by section 235 of the Tax Law,

and was applicable only when the tax should remain due and unpaid; and that the Transfer Tax Law recognized the right of the taxpayer to reach the State Treasurer, who was the ultimate recipient of the funds, through the Comptroller as well as through the county treasurer.

[1] Originally the 10 per cent. was denominated interest and penalty. Laws 1885, c. 483, §§ 4, 5. By amendments, the word "penalty" has been dropped, and the two sections embodied in section 223 of the Tax Law. Under the act of 1885 the 10 per cent. was treated in People v. Prout, 53 Hun, 541, 6 N. Y. Supp. 457, as a penalty. But whether or not a penalty the Transfer Tax Law is a special act, and requires a strict construction. Matter of Kennedy, 113 App. Div. 4, 99 N. Y. Supp. 72. In the Matter of Enston, 113 N. Y. 174, 178, 21 N. E. 87, 88 (3 L. R. A. 464), it was said:

"In such a case they [the executors] have the right, both in reason and justice, to claim that they shall be clearly brought within the terms of the law [Transfer Tax Act] before they shall be subjected to its burdens."

However, there was no ambiguity in the statute (General Laws, c. 24, supra) as to the time within which or the person to whom the tax should be paid, nor that, if not paid within 18 months from the accrual thereof, interest should be charged and collected thereon at the rate of 10 per cent. per annum from the time the tax accrued.

[2] Not only was the appellant presumed to know the provisions of the Transfer Tax Law applicable to Ulster county, but the notice served upon him the day the amount of the tax was fixed expressly called his attention thereto, as before stated.

[3] The claim of the appellant that the acceptance by the county treasurer of a sum equaling the amount of the tax prevents the collection of the 10 per cent. is without merit. The payment was received by the county treasurer not in full payment of the tax, but "upon account," as the receipt given by him to the appellant expressly stated, and such acceptance of the sum paid in no way barred the remedy provided by section 235 of the Tax Law for the collection of the 10 per cent.

[4] As to the claim of the appellant that the Transfer Tax Law recognized his right to make payment to the Comptroller, the statute required payment to be made of transfer tax moneys payable in the 46 counties of the state in which the appraiser was not a salaried officer to the county treasurer, and that the county treasurer should pay the moneys so received by him to the State Treasurer. The Comptroller was not made by statute the recipient of such moneys, nor was he anywhere authorized to receive or receipt therefor. The transfer tax moneys which he was authorized to receive and receipt for and to pay to the State Treasurer were those received by him in the 15 counties of the state having salaried appraisers. Had the check been sent by the appellant to the State Treasurer, the final depositary of the funds, a very different question might have been presented. But the county treasurer cannot be compelled by mandamus to execute a receipt acknowledging the payment to him of date August 11th, or of a prior date, of transfer tax moneys which were in fact not paid to him until

four days later, and which were at no time tendered to the county treasurer or to any person at any time authorized to have the custody of the moneys. In State v. Mutual Life Insurance Co., 175 Ind. 59, 93 N. E. 213, 42 L. R. A. (N. S.) 256, it appears that by the tax laws of the state of Indiana each of the foreign insurance companies doing business in that state was required to report semiannually to the Auditor of the state the gross amount of receipts received within the state for insurance premiums, and at the time of making such report "to pay into the treasury of the state" 3 per cent. of such receipts, and providing, in the event of failure to make such report, a penalty to be recovered in an action in the name of the state of Indiana on the relation of the Auditor of the state to revoke the authority of such defaulting company to do business within the state. It appears that for a long series of years the defendant and other insurance companies, as well as the State Auditor, had acquiesced in construing the statute as requiring payment to be made into the hands of the State Auditor, and that payment had been made accordingly, and that the various auditors had turned such money into the state treasury until the years 1904 and 1905, when the Auditor then in office converted to his own use a portion of such moneys paid to him. The court held that the defendant was chargeable with knowledge of the scope of the official authority of the Auditor, that he had no authority to receive these moneys on behalf of the state, and that the Auditor must be held to have received the moneys in his individual capacity as agent of the defendant and that the departmental construction of years to the effect that payment to the Auditor was payment to the state availed the defendant nothing, and that it must again pay the moneys.

While the 10 per cent. now amounts to a considerable sum, the statute vests no discretionary power in the court or the right to grant equitable relief, as the appellant suggests.

The order of the Special Term denying the application for a writ of mandamus must be affirmed. All concur.