(Surrogate's Court, New York County. December 17, 1913.)

1. TAXATION (§ 895*)—INHERITANCE TAX—APPRAISEMENT—JURISDICTION.

Under Transfer Tax Law (Consol. Laws 1909, c. 60) § 229, providing for the appointment of appraisers, and section 230, requiring the surrogate to direct one of such appraisers to value property of estates subject to the payment of any tax, who shall notify all persons interested, including the state comptroller, of the time and place of appraisal, and who

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

may issue subpœnas to witnesses, take their evidence under oath as to the value of such property, and report his action, together with the depositions, etc., to the surrogate, the appraiser, as preliminary to valuation, has jurisdiction to take evidence upon and decide in the first instance questions of law and fact necessarily preceding appraisal, such as the existence and identity of property of an estate.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

2. TAXATION (§ 895*)—INHERITANCE TAX—STATUS OF APPRAISER.

An appraiser does not act as a representative of the state comptroller, but should decide as a disinterested arbiter the questions of law and fact arising before him.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

3. TAXATION (§ 895*)—INHERITANCE TAX—APPRAISEMENT—POWER OF SURROGATE.

Under Transfer Tax Law (Consol. Laws 1909, c. 60) § 228, providing that the surrogate shall hear and determine all questions arising under the article, and section 231, providing that from the appraiser's report and other proof the surrogate shall determine the cash value of all estates and the liability to taxation, the jurisdiction of the appraiser as to questions arising before him is not exclusive, but the surrogate has jurisdiction to determine all questions under the act, including the estate's ownership of property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

Application by the Farmers' Loan & Trust Company, as executor of Cora F. Barnes, deceased, for the surrogate's determination whether the transfer of the interest of deceased in a domestic corporation was subject to a tax. Referee appointed to take and report evidence upon the questions presented, with his findings and recommendations thereon.

Hawkins, Delafield & Longfellow, of New York City (Lewis Livingston Delafield and Alfred Gregory, both of New York City, of counsel), for executor.

M. Gregg Latimer, of New York City, for Anna B. Bliss and Mildred B. Bliss; Thomas E. Rush, of New York City (Thomas A. S. Beattie, of New York City, of counsel), for comptroller.

FOWLER, S. This application is made by the Farmers' Loan & Trust Company as executor of the last will and testament of the deceased, for the purpose of having the surrogate determine whether the transfer of the interest of deceased in the Centaur Company, a New York corporation, is subject to a tax; and if this question is answered in the affirmative the executor asks that the surrogate determine the time at which the interest of the deceased in the company shall be appraised for the purpose of the transfer tax, and the persons who are liable for its payment.

Cora F. Barnes died on September 29, 1911. At the time of her death she was a resident of New York County. A petition was duly filed in this court asking that the surrogate designate an appraiser for the purpose of assessing the transfer tax upon her estate, and on the 17th day of May, 1912, an order was made designating as such ap-

praiser Mr. Michael J. Garvin, one of the persons appointed under section 229 of the Tax Law. Affidavits containing a description of the assets of the estate and the executor's valuation of such assets were duly filed with the said appraiser. In one of the affidavits so filed a reference was made to an instrument executed by Cora F. Barnes and others in 1908, wherein it was alleged that she was at that time the owner of 250 shares of the capital stock of a corporation known as the Centaur Company. Subsequently to the filing of the originals of such affidavits, the executor filed with the appraiser supplemental affidavits tending to show that said Cora F. Barnes was not the owner of the 250 shares of the capital stock of the Centaur Company, and that, because of facts which had come to the knowledge of the executor after the filing of the original affidavits, the interest of the deceased in the Centaur Company was not subject to a transfer tax. A motion was made by the attorney for the state comptroller to strike these supplemental affidavits from the record, and the motion was granted by the appraiser.

The executor then made this application to the surrogate, and pending its determination no further proceedings are being taken before the appraiser. The executor now contends that the appraiser has no jurisdiction to determine whether Cora F. Barnes, at the time of her death or at any time prior thereto, had any interest in the Centaur Company, the transfer of which is subject to a tax under the Transfer Tax Law.

[1] Section 230 of the Transfer Tax Law provides that the surrogate—

"shall by order direct one of the persons appointed pursuant to section 229 of this article * * * to fix the fair market value of property of persons whose estates shall be subject to the payment of any tax imposed by this article. Every such appraiser shall forthwith give notice * * * to all persons known to have a claim or interest in the property to be appraised, including the state comptroller, * * * of the time and place when he will appraise such property. He shall at such time and place appraise the same at its fair market value as herein prescribed; and for that purpose the said appraiser is authorized to issue subpœnas and to compel the attendance of witnesses before him and to take the evidence of such witnesses under oath concerning such property and the value thereof; and he shall make report thereof and of such value in writing, to the said surrogate, together with the depositions of the witnesses examined, and such other facts in relation thereto and to said matter as the surrogate may order or require."

Before the appraiser can appraise the property of a deceased person it must be made to appear by affidavits submitted to the appraiser or testimony taken before him that the deceased died possessed of certain property. In other words, it must appear that there is something to appraise. The affidavits in regard to the property constituting the estate of a person deceased are usually supplied by the executor of the estate.

The identification of the property as property belonging to a person deceased at the time of his death, or transferred by him in contemplation of death, must necessarily precede its valuation for the purposes of the transfer tax. The appraiser could not proceed with the appraisal of property as a basis for the imposition of a tax in a particu-

lar estate, unless it was made to appear in some way that such property constituted a part of the estate to be appraised. It would therefore seem that if any question arises in the course of the appraisal as to the ownership of the property or the right or title to it, the appraiser should have jurisdiction to determine such questions in the first instance before proceeding with the actual appraisal of the property.

The statute gave the appraiser the right to issue subpœnas and to compel the attendance of witnesses before him and to take the evidence of such witnesses under oath "concerning such property and the value thereof." If it be held that the Legislature intended to limit the jurisdiction of the appraiser to the mere ascertainment of the value of the property, the words "concerning the said property" in the paragraph quoted are rendered superfluous. That the words in question, in addition to the direction to take evidence as to the value of the property, were inserted in the act, indicates that the Legislature intended to confer upon the appraiser power or jurisdiction to take evidence upon and to decide in the first instance such preliminary questions as might arise in the course of the appraisal, as the determination of such questions necessarily precedes the valuation of the assets. We must breathe into a directory statute the spirit of order. Our conclusion receives further corroboration from the statement contained in the statute that the appraiser "*shall make report thereof* and of such value in writing." If it had been intended by the Legislature that the appraiser should report only as to the *value* of the property, it would seem to have been quite unnecessary to insert in the statute the additional words "shall make report thereof."

In practice if a person who is a resident of this state dies seised of real estate the appraiser does not personally appraise the property, but accepts the evidence of some one qualified to appraise real estate; if the property consists of paintings, statuary, or works of art the appraiser requires the evidence of a person whose experience and knowledge of art and the market for art enable him to testify as to the value of such articles; if the property consists of stocks and bonds, their value is ascertained by a reference to the quotations in the standard financial publications, or if necessary, experts may be called. Unless the appraiser may in the first instance take testimony on disputed questions of ownership and pass upon questions of law arising in the proceeding and necessarily incident to the determination of the taxability of the estate, the appraiser's title would seem to be a misnomer and his duties in connection with the appraisal of the estate would be merely clerical and perfunctory and those of an assessor.

That it was the intention of the Legislature that all questions, in connection with the appraisal of the estate of a resident and the taxation of the various interests transferred by the will or under the intestate laws, should in the first instance be passed upon by the official appraiser, and his determination reviewed by the surrogate, is manifest by the section of the statute which provides for an appeal to the surrogate from an order entered upon the appraiser's report. If whenever a question of law arises before an appraiser the proceedings are to be suspended until such question is determined by the surrogate, the order

entered upon the appraiser's report will really represent the judicial determination by the surrogate of the various questions connected with the appraisal of the estate, and the contemplated appeal to the surrogate from the order of the appraiser will be supererogatory, as it could not bring up for review any question not already passed upon by the surrogate. This course would make futile and supererogatory the section of the statute providing for appeals to the surrogate. It is therefore obvious to me that it was the intention of the Legislature that all questions arising upon the appraisal of the estate of a resident should in the first instance be passed upon by the appraiser, and from the order entered upon his report that an appeal should be taken to the surrogate, if desired, when the various questions passed upon by the appraiser may be reviewed and a judicial determination had thereon.

The practice adopted by the appraisers in the appraisal of estates has always been in accordance with the assumption that the statute gave them jurisdiction, in the first instance, to pass upon all questions arising in connection with the ascertainment of the value of taxable interests of a resident citizen of the state. This appears a rational and orderly construction of the statute, if we have regard to the adjudicated cases. In the case of Kelsey v. Church, 112 App. Div. 408, 98 N. Y. Supp. 535, it was said that the facts concerning the taxability of an estate do not have to be established before an appraiser is appointed, and the surrogate cannot wait before appointing an appraiser in order to determine judicially whether the estate is subject to taxation. From this it may be inferred that the question whether the property is or is not subject to taxation, is to be determined, in the first instance, by the appraiser who has been duly appointed by the surrogate for that purpose.

In Matter of Kennedy, 113 App. Div. 4, 99 N. Y. Supp. 72, it appeared that the decedent had about $700,000 a few years before his death. His executors were interrogated by the appraiser as to this property and they refused to answer. It was assessed as a part of his estate, an appeal was taken to the Appellate Division, and it was said by that court that the executors who refused to answer were contumacious and could be punished for contempt. If they could be punished for refusing to answer questions put to them by the appraiser in regard to property which a deceased resident was alleged to have possessed several years before his death, the appraiser must have had jurisdiction to ask the questions, because if there was no jurisdiction on the part of the appraiser to make the inquiry there could be no contempt on the part of the witnesses who refused to answer the extrajudicial questions. In Matter of Ullmann, 137 N. Y. 407, 33 N. E. 480, it was said that:

"Every officer charged with the duty of executing the taxing power, whether it be a surrogate or a town assessor, must necessarily decide in a judicial capacity important questions of law in order to perform the duties of his office."

This language is broad enough to include the appraiser as well as the surrogate. And in Matter of Costello, 189 N. Y. 288, 82 N. E. 139, it was held that an appeal would not lie to the Appellate Division

from the formal order entered upon the appraiser's report, but that an appeal should first be taken to the surrogate acting judicially.

When reading the decisions of the upper courts of the state upon the true construction of the Transfer Tax Law, I may say with deference that I am always impressed by the immense grasp of practical detail displayed and by the spirit and order which our great courts have breathed into complicated statutory provisions. The statement of the courts that a purely administrative official acts "in a judicial capacity" is not, however, to be taken in the broadest or most technical sense. It means in this instance, as I venture to think, no more than an admonition that appraisers, for example, shall always give effect to the maxim, "Audite alteram partem"—hear the other side—and act consistently throughout with common principles of justice and "fair play." With that deference which is also due to the legislative branch of the government from a state official, it may be said that the higher courts of this state have much contributed in this instance to the very practical and efficient results attained by the Transfer Tax Law. This being so, I proceed to the further consideration of the meaning of the statute in the light of such decisions.

A construction of the statute which would impose on the surrogates of this county the necessity of administering in the first instance the Transfer Tax Law by themselves would be impracticable and unworkable, and could not have been intended. The Surrogate's Court for the County of New York is not only a judicial tribunal of most extended powers and influence, but it administers one of the largest purely administrative bureaus in the world. It performs administrative duties which in other parts of the world have been lately separated from the courts, thus causing more officials and greater expense to the public. Reforms are not always improvements on existing institutions. "Res novæ" often means revolutions. The amount of property passing annually through this court or under its supervision is larger than that of any other court of first instance in the world, and yet here all the accounts, vouchers, and transactions of the representative dealings with such property are deposited and ultimately passed on judicially, and I believe passed on with fair efficiency and accuracy.

On its judicial side the Surrogate's Court is the only state court which habitually makes decrees in rem binding on all the world. In respect of the personal estate of deceased persons its decree is essential before the action of any other court in the state may be invoked. If rightly understood and applied, the jurisdiction and common law of this court are of great power and influence and highly conducive to the well-being and order of the state. A court laboring under the responsibilities indicated should not be burdened by unnecessary ministerial duties under the Transfer Tax Law, if such duties may be better and more expeditiously performed by the appraiser in the first instance, and ordinarily they can be. If it were held that the appraiser had no jurisdiction to take testimony in connection with disputed questions arising before him, or to pass upon such questions, then the procedure would necessarily be that the proceeding before the appraiser would be

suspended and the questions immediately referred to the surrogate for determination. The surrogate might, in accordance with the practice and power of this court, appoint a referee to take testimony upon the disputed questions and report to the surrogate. If such were the general practice the expense incident to such a proceeding would in many cases be in excess of the tax that could be assessed upon the estate, and it would prove a grievous hardship upon legatees and persons interested in small estates. The same purpose can be accomplished without the additional expense by having the appraiser take the testimony and pass upon the questions in the first instance, subject to review by the surrogate.

[2] It is alleged that the transfer tax appraiser always acts as a representative of the state comptroller rather than as a disinterested arbiter. This, if true, is a violation of the obligations of the appraiser and not contemplated by the act. An appraiser should decide with entire impartiality the questions arising before him, whether of law or of fact or mixed questions of law and fact. The state comptroller is only one of the parties to the proceeding before the appraiser, and is entitled to no more consideration than the representatives of the estate. An error of the appraiser in this regard cannot enter into the construction of the statute. The surrogate may always correct such errors, if duly advised.

[3] The jurisdiction of the appraiser to determine questions arising before him is however not exclusive. The surrogate may determine the cash value of estates and the amount of tax without appointing an appraiser. Section 228 of the Tax Law provides that the surrogate "shall have jurisdiction to hear and determine all questions arising under the provisions of this article." This is a general grant of jurisdiction. Section 231 provides:

"From such report of appraisal and other proof relating to any such estates before the surrogate, the surrogate shall forthwith as of course determine the cash value of all estates and the amount of tax to which the same are liable."

In Matter of Ullmann, supra, it was held that the surrogate has jurisdiction to hear and determine all questions in relation to taxation under the Transfer Tax Act, and that the court has power to decide every question that may be raised in a proceeding under the act. The surrogate, therefore, has jurisdiction to hear the questions raised by this application. But as the affidavits submitted to the court are mostly "hearsay," and no proper foundation seems to have been laid for the introduction of secondary evidence, I will appoint in this very important matter Hon. Charles F. Brown referee, to take the proper evidence upon all the questions presented by this application, and to report such evidence, together with his findings and recommendations thereon, to this court.

Settle order on notice.